Argued and submitted December 13, 2019, affirmed January 27, 2021

## STATE ex rel Paul Julian MANEY,
*Relator-Appellant,*

*v.*

## Michael HSU,
Chairperson,
Board of Parole and Post-Prison Supervision,
*Defendant-Respondent.*

### Marion County Circuit Court
16CV25083; A166163

482 P3d 136

Relator appeals from a judgment dismissing an alternative writ of mandamus. Relator argues that the trial court erred by basing its dismissal on *Larsen v. Board of Parole*, 191 Or App 526, 84 P3d 176, *rev den*, 337 Or 248 (2004), which relator contends was wrongly decided. More specifically, relator argues that *Larsen*'s construction of ORS 163.105 (1977) is rendered untenable by two subsequent Oregon Supreme Court cases, and that the law requires the Board of Parole and Post-Prison Supervision to set a release date for relator. Defendant responds that nothing in either of the subsequent Supreme Court cases cited by relator can fairly be read to undercut the holding in *Larsen*. *Held*: Because relator has not shown that the decision in *Larsen* was "plainly wrong," that case remains controlling; therefore, the Court of Appeals affirms the judgment dismissing the writ.

Affirmed.

David E. Leith, Judge.

Jason E. Thompson argued the cause for appellant. Also on the opening brief was Ferder Casebeer French Thompson & Stern, LLP. Also on the reply brief was Thompson Law, LLC.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Landau, Senior Judge.*

_____

* Landau, S. J., *vice* Armstrong, P. J.

LANDAU, S. J.

Affirmed.

**LANDAU, S. J.**

This is an appeal from a judgment dismissing an alternative writ of mandamus. The issue is whether the Board of Parole and Post-Prison Supervision must set a release date for relator, who has served the mandatory minimum sentence for aggravated murder under ORS 163.105 (1977).[1] The board concluded that it is without authority to set a release date until relator meets his statutory burden of establishing that he is likely to be rehabilitated within a reasonable time. The trial court concurred, based on *Larsen v. Board of Parole*, 191 Or App 526, 84 P3d 176, *rev den*, 337 Or 248 (2004). On appeal, relator argues that *Larsen* was wrongly decided and that the law compels the board to set a release date for him without proof that he is likely to be rehabilitated. We conclude that *Larsen* remains controlling and therefore affirm the judgment dismissing the writ.

The facts are procedural and undisputed. Relator was convicted of aggravated murder in 1981. At the time of the offense, ORS 163.105(2) (1977) provided, in part, that when a defendant is convicted of aggravated murder, "the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole." Accordingly, relator was sentenced to life in prison with a minimum of 20 years without the possibility of parole.

At the time of the offense, ORS 163.105 (1977) also provided a process for modifying the sentence when a defendant has been convicted of aggravated murder and sentenced to life imprisonment with a 20-year minimum:

"(3)   At any time * * * after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue

---

[1] ORS 163.105 has been amended several times since 1977: Or Laws 2019, ch 634, § 27; Or Laws 2015, ch 820, § 45; Or Laws 2009, ch 660, § 6; Or Laws 2007, ch 717, § 1; Or Laws 1999, ch 782, § 5; Or Laws 1999, ch 59, § 31; Or Laws 1995, ch 421, § 2; Or Laws 1991, ch 126, § 8; Or Laws 1989, ch 720, § 1; Or Laws 1987, ch 803, § 20; Or Laws 1987, ch 158, § 23; Or Laws 1985, ch 3, § 1; Or Laws 1981, ch 873, § 4.

shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.500 except that:

"(a)   The prisoner shall have the burden of proving by a preponderance of the evidence that he is likely to be rehabilitated within a reasonable period of time[.]

"(b)   The prisoner shall have the right, if he is without sufficient funds to employ an attorney, to be represented by legal counsel, appointed by the board, at state expense.

"(4)   If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of his confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect. Otherwise, the board shall deny the relief sought in the petition.

"(5)   Not less than two years after the denial of the relief sought in a petition under this section, the prisoner may petition again for a change in the terms of his confinement. Further petitions may be filed at intervals of not less than two years thereafter."

The statute thus permits the board to override the 20-year minimum if a prisoner has served at least 15 years and establishes that he or she is likely to be rehabilitated within a reasonable period of time.

In *Larsen*, the issue was what happens if the prisoner has already served the minimum—does the prisoner still have the burden of proving likelihood of rehabilitation before the board can authorize release? *Id.* at 528. The prisoner in that case argued that the statute imposes that burden only in cases brought any time after 15 years from sentencing *but before the statutory minimum has been served.* *Id.* This court rejected that argument, noting that the prisoner's reading of the statute was contrary to its plain meaning, specifically, the statute's declaration that "at *any time* after 15 years from the date of imposition" of the sentence a prisoner may seek a release date, not "any time after 15 years but before serving 20 years." *Id.* at 533 (emphasis in original). The court further noted that other provisions of the statute permit multiple successive petitions for relief "at

intervals of not less than two years," which also appears to contemplate an open-ended time span that commenced after the service of 15 years. *Id.*[2]

In this case, relator—like the prisoner in *Larsen*—had already served the 20-year minimum when, in 2016, he requested that the board establish a parole release date. Relator—also like the prisoner in *Larsen*—failed to establish that he is likely to be rehabilitated within a reasonable time. Not surprisingly, the board denied relator's request.

Relator then filed a petition for a writ of mandamus, seeking to compel the board to establish a parole release date. ORS 34.130. The trial court initially granted an alternative writ. The board then moved to dismiss, based on *Larsen*. The trial court granted the board's motion and entered judgment dismissing the alternative writ.

On appeal, relator does not contest that his case is squarely controlled by *Larsen*. His sole contention is that *Larsen* was wrongly decided and must be overruled. Referring to the Supreme Court's decision in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), relator contends that "the *Larsen* court did not follow *Gaines* and apply the appropriate statutory interpretation framework to ORS 163.105 (1977)." In particular, relator argues, the court gave inadequate attention to the relevant context of the statute, which he contends includes two later Oregon Supreme Court decisions—*Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010), and *State ex rel Engweiler v. Felton*, 350 Or 592, 260 P3d 448 (2011). Relator argues that, in those two cases, the Supreme Court made statements about the effect of ORS 163.105 (1977) that render *Larsen* no longer tenable.

The board responds that neither *Janowski/Fleming* nor *Engweiler* addressed the issue decided in *Larsen*, and nothing in either of them can fairly be read to undercut the holding in *Larsen*.

---

[2] The prisoner in *Larsen* also invoked ORS 144.110 (1977) as independent authority compelling his release without proof of likelihood of rehabilitation. This court rejected that argument as well, observing that the statute declares: "The board shall not release a prisoner on parole who has been convicted of *** aggravated murder *** except as provided in ORS 163.105." *Larsen*, 191 Or App at 534-35.

Thus framed, the issue for us is whether *Larsen* and its interpretation of ORS 163.105 (1977) should be overruled. The interpretation of a statute is a question of law. *State v. Guynn*, 302 Or App 78, 79, 459 P3d 900 (2020). But regarding the meaning of a statute that has already been interpreted by this court, a party arguing that the court was wrong in doing so bears a heavy burden. As recently explained in *State v. Merrill*, 303 Or App 107, 120, 463 P3d 540 (2020), we will overrule a prior statutory construction decision "only in extraordinary circumstances—when such prior interpretation was plainly erroneous."

At the outset, it must be said that relator's contention that *Larsen* was erroneously decided because it failed to follow *Gaines* is an odd one on at least a couple of levels. First, *Gaines* was not decided until more than five years after *Larsen*. Second, aside from that, *Gaines* did not introduce any new principles of interpretation apart from permitting the examination of legislative history in the absence of a demonstrated ambiguity in the statutory text—a principle that relator does not invoke in this case. 346 Or at 171-72. Instead, relator invokes the principle that courts must construe a statute consistently with its context—a principle that long predated *Gaines*. *See, e.g.*, *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e construe each part [of a statute] together with the other parts in an attempt to produce a harmonious whole."). Finally, the context that relator emphasizes consists of Supreme Court decisions that, again, were not published until years after *Larsen* was decided.

*Gaines*, then, provides a shaky basis for arguing that *Larsen* must be reevaluated.

It may nonetheless be the case that subsequent Supreme Court decisions undercut the validity of prior Court of Appeals decisions. As we have noted, though, that must plainly be the case before this court will overrule its precedents. *See, e.g.*, *State v. McKnight*, 293 Or App 274, 278, 426 P3d 669, *rev den*, 363 Or 817 (2018) (our precedent will not be overruled unless later Supreme Court case law demonstrates that the earlier decision is "plainly wrong"). Here, relator has not met his burden.

In *Janowski/Fleming*, both prisoners had been convicted of aggravated murder and sentenced to the mandatory minimum term of incarceration. 349 Or at 436-37. Before having served that minimum, both sought a hearing under ORS 163.105(3) (1985).[3] *Id.* at 437. Both established that they were likely to be rehabilitated within a reasonable time. *Id.* at 437-38. The issue was what law governed the board's determination of a release date. *Id.* at 446. The Supreme Court ultimately concluded that the release dates were to be determined by the matrix ranges in effect on the dates the prisoners had committed their crimes. *Id.* at 453.

In the course of its opinion, the Supreme Court described the effect of ORS 163.105(3) (1985) as giving the board "authority to override the * * * mandatory minimum sentence for aggravated murder." *Janowski/Fleming*, 349 Or at 446. As we understand it, relator seizes on that description of the statute and reasons that, if ORS 163.105 (1977) authorizes the board to override the mandatory minimum sentence, it cannot apply to this case, because he has already served that minimum sentence.

It bears some emphasis that the prisoners in *Janowski/Fleming* had not yet served their mandatory minimum sentences and that both of them had established to the board's satisfaction that they were likely to be rehabilitated within a reasonable time. So, the issue presented in *Larsen* and in this case—whether a prisoner who has already served the mandatory minimum must prove likelihood of rehabilitation—was not before the court.

Moreover, in the context of that case, the *Janowski/Fleming* court's description of the effect of ORS 163.105(3) makes perfect sense. That is, when a prisoner who has not yet served the mandatory minimum sentence proves that he or she is likely to be rehabilitated within a reasonable time, ORS 163.105(3) (1985) does have the effect of authorizing the board to override that mandatory minimum. But that does not mean that the statute has that effect *and nothing more*. The Supreme Court simply had no occasion to address that matter. In particular, the court had no occasion to address

---

[3] As noted above, ORS 163.105 had been amended a number of times since 1977; however, the relevant provisions remained the same.

the wording of the statute that the *Larsen* court found so compelling when applied to a prisoner asking for release *after* having served the mandatory minimum. For instance, the Supreme Court did not address the fact that the statutory text provides for a hearing "at any time" after 15 years from sentencing, and at two-year intervals thereafter—phrasing that led this court in *Larsen* to conclude that ORS 163.105(3) (1977) describes an open-ended process, not one limited to the term of the mandatory minimum sentence. That is unsurprising, because those provisions were not relevant to the issues before the court.

*Engweiler* similarly offers no basis for concluding that *Larsen* was plainly incorrect. In that case, the court addressed the issue of whether the process described in ORS 163.105(3) (1989) applies to prisoners who were convicted of aggravated murder when they were juveniles. *Engweiler*, 350 Or at 596. The court concluded that the statute does not apply to juveniles, because it "ha[s] no applicability to a prisoner who is not serving a mandatory minimum sentence." *Id.* at 611.[4] The court said that, under the plain wording of the statute, the "trigger" for the requirement of a rehabilitation hearing "is the imposition of a minimum period of confinement." *Id.* (internal quotation marks and brackets omitted). Because the statutes in effect at the relevant time provided that juveniles are not subject to the imposition of a minimum sentence, the court concluded, the process in ORS 163.105 (1989) cannot apply. *Id.*[5]

Once again, in the course of its decision, the court described ORS 163.105 (1989) as authorizing the board to "override" a mandatory minimum. *Engweiler*, 350 Or at 610. But once again, as in *Janowski/Fleming*, the court's characterization of the statute in *Engweiler* went as far as was necessary in that case and did not begin to address the issue presented in *Larsen* and in this one.

---

[4] The court similarly concluded that ORS 144.110, which provides that the board may not release a person convicted of aggravated murder "except as provided in ORS 163.105," applies only to those serving a mandatory minimum sentence. *See Engweiler*, 350 Or at 613, 615.

[5] ORS 161.620 (1989) provided that "a sentence imposed upon any person remanded from the juvenile court *** shall not include *** imposition of any mandatory minimum sentence," unless the juvenile was 17 at the time of the offense.

It is certainly possible that the Supreme Court—if it were ever to take up the issue in this case—could decide that *Larsen* was wrongly decided. But until the court does that, this court remains bound by its own case law, unless it is shown to be "plainly" in error. Relator has not made that showing here.

Affirmed.