Argued and submitted June 20, 2019, vacated and remanded for consideration of post-incarceration evidence February 10, 2021

JIMMIE ARLYN FORBUS,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A162364

482 P3d 95

Petitioner seeks judicial review of a Board of Parole and Post-Prison Supervision (the board) order setting his prison term for aggravated murder. Petitioner argues that the board erred by assigning a crime severity rating of 8 based on a matrix rule that was not in effect when he committed his offense and a finding that his offense involved "cruelty to victim" under applicable administrative rules. He also argues that the board erred in failing to properly consider evidence of his rehabilitative efforts while incarcerated. *Held*: Although—as of the date of his 1994 aggravated murder offense—the prison term matrix rules did not have a crime severity rating of 8 associated with aggravated murder, the board did not impermissibly apply that rating to petitioner's prison term. The board's decision to find the aggravated murder offense involved "cruelty to victim" was reasonable under the phrase's definition and was supported by substantial evidence and substantial reason. ORS 183.482(8). Finally, the board erred when it rejected petitioner's evidence of rehabilitative efforts and performance in prison. *Cunio v. Board of Parole*, 288 Or App 459, 407 P3d 839 (2017), *rev den*, 362 Or 860 (2018).

Vacated and remanded for consideration of post-incarceration evidence.

Shawn Wiley, Deputy Public Defender, argued the cause for petitioner. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Shorr, Judge, and Brewer, Senior Judge.*

_____

* Brewer, S. J., *vice* Armstrong, P. J.

BREWER, S. J.

Vacated and remanded for consideration of post-incarceration evidence.

**BREWER, S.J.**

On judicial review of an order of the Board of Parole and Post-Prison Supervision (the board) that set his prison term for aggravated murder, petitioner makes two assignments of error. In the first, he argues that the board erred by (a) assigning his crime's severity rating based on a matrix subcategory that was not in effect when he committed the offense; and (b) finding that the offense involved "cruelty to victim." In his second assignment of error, petitioner asserts that the board erred in excluding evidence of his rehabilitative efforts while incarcerated. For the reasons explained below, we reject petitioner's first assignment of error. However, because we agree with petitioner that the board—as it concedes—erroneously excluded evidence of his rehabilitative efforts, we vacate and remand the order on that basis.

## FACTS AND PROCEDURAL HISTORY

On December 1, 1994, petitioner went to the residence of the victim, Gary Pagh. When the victim's mother answered the door, defendant shoved her out of the way and went inside. Petitioner found Pagh in a bedroom and attacked him "without any provocation," repeatedly stabbing him with a knife. Pagh's mother attempted to pull petitioner off of Pagh approximately three times. Petitioner threw her off, stabbed her "through the right forearm," and cut her right shoulder and the back of her head. Petitioner alternated between stabbing Pagh and his mother. At some point in the attack, Pagh's 76-year-old grandmother attempted to hit petitioner with a "souvenir baseball bat." Petitioner took the bat away from her, hit her on the head with it, and stabbed her in the chest. Petitioner then fled the scene.

Pagh was able to escape outside to the front of the house, where he collapsed. When police arrived, Pagh was lying in front of the house, with "multiple stab wounds," "covered in blood and look[ing] very pale." He was taken to the hospital, where he was pronounced dead. An autopsy showed that Pagh had bled to death. Petitioner had stabbed him 26 times, resulting in five wounds to the thorax, with

lacerations of the lungs and heart, five wounds to the abdomen, with lacerations of the stomach and retroperitonium, 13 wounds to the upper extremities, and three wounds to the lower extremities. Both Pagh's mother and grandmother survived their injuries.

The subsequent criminal investigation revealed that petitioner had become romantically involved with Pagh's estranged wife. There also was evidence that Pagh might have "snitched" to police about petitioner's possible drug dealings.

In July 1995, petitioner pleaded guilty to the aggravated murder of Gary Pagh. The court sentenced him to life imprisonment with a 30-year minimum prison term before being eligible for parole. In January 2015, the board held a murder review hearing pursuant to ORS 163.105(2) (1993).[1] At the conclusion of the hearing, the board found that petitioner had met his burden to prove that he was likely to be rehabilitated within a reasonable period of time.

In June 2015, the board held a prison term hearing to set a projected parole release date for petitioner. Petitioner's criminal history included numerous felony convictions; based on that record, which petitioner did not challenge, the board found that petitioner's history risk score was "1" (poor).

The board rated the crime severity of the offense in category "8," which it based on an initial severity rating of 7 and a further finding of "cruelty to victim" under subcategory 1 of the board's matrix rule, which we discuss in detail below. That determination resulted in a sentencing matrix range of 288 months to life imprisonment. The board also found two aggravating factors: (1) "[v]erified instances of repetitive assaultive conduct; two prior assaultive convictions[;]" and (2) "[p]ersistent involvement in similar criminal offenses; attempted aggravated murder, assault I and robbery I." Based on the sum of its findings, the board set

_____

[1] We set out and discuss that statute below. Unless otherwise noted, we refer to the version of that statute and the other statutes cited in this opinion that were in effect when petitioner committed his crime. Also, unless otherwise noted, subsequent amendments to those statutes have not materially altered their substance in ways that are pertinent here.

petitioner's prison term at 432 months, with a projected release date of January 12, 2031.[2]

Petitioner sought administrative review of the prison term decision. The board denied petitioner's requested relief, and petitioner now seeks judicial review.

## STANDARD OF REVIEW

This court reviews board orders under the standards of review set out in ORS 183.482(8). *See* ORS 144.335(3) (so providing). As applicable here, ORS 183.482(8) provides:

"(a)   The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, the court shall:

"(A)   Set aside or modify the order; or

"(B)   Remand the case to the agency for further action under a correct interpretation of the provision of law.

"* * * * *

"(c)   The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

To facilitate judicial review under those standards and to ensure that the board has complied with its statutory responsibilities, board orders must be accompanied by findings of fact and conclusions of law that demonstrate substantial reason. *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014). That is, the board "must articulate a rational connection between the facts [found] and the legal conclusions it draws from them." *Id*.

## ANALYSIS

In his first assignment of error, petitioner argues that the board erred in rating his crime's severity in category 8, because (1) the subcategory—"cruelty to victim"—that

---

[2] On July 21, 2015, the board issued BAF 18, in which it used the earned time currently calculated by the Department of Corrections to reduce petitioner's prison term by 1,781 days.

the board used to do so was not in effect at the time of petitioner's crime; and (2) substantial evidence did not support the board's finding that the crime showed "cruelty to victim."

The board initially responds that petitioner did not exhaust his judicial remedies with respect to his argument that the board lacked authority to rate his crime's severity in category 8. *See* ORS 144.335(1)(b) (providing for judicial review of board order if petitioner "has exhausted administrative review as provided by board rule"); *see also* OAR 255-080-0008(1)(d) (requiring petitioner on administrative review to "specifically identif[y]" ways "the offender believes the Board's action to be in error"). Having reviewed the record, we reject the board's exhaustion argument under the applicable standard. *See Tuckenberry v. Board of Parole*, 365 Or 640, 655, 451 P3d 227 (2019) (taking prudential approach to issue exhaustion in board proceedings to impose special conditions of post-prison supervision); *see also Schmult v. Board of Parole*, 306 Or App 350, 355, 474 P3d 920 (2020) (similarly applying *Tuckenberry*).

Turning to the merits, petitioner's first argument is three-pronged: (1) The board was required to set his prison sentence in accordance with parole matrix rules that existed when he committed his offense in 1994; (2) the board lacked authority to rate the severity of his offense under crime category 8 by using subcategory 1, because that subcategory did not exist for aggravated murder when he committed his offense; and (3) the board therefore was required to rate the severity of the offense under crime category 7, pursuant to a rule that the board adopted in 1992. We review that argument for legal error, which requires consideration of the history of the statutes, board rules, and case law that govern setting prison terms for aggravated murder.

Under the sentencing matrix system adopted in 1977, although judges imposed criminal sentences, the legislature authorized the board to determine the actual duration of an inmate's imprisonment. *Hamel v. Johnson*, 330 Or 180, 185-86, 998 P2d 661 (2000) (under matrix system, parole release date set by board, not indeterminate sentence, establishes how long prisoner will be incarcerated). In setting the initial parole release date for a prisoner

committed to the Department of Corrections, the board is required to "apply the appropriate range established pursuant to ORS 144.780." ORS 144.120(2) (1993). ORS 144.780(1) (1985) in turn directs the board to promulgate "rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole." To comply with that directive, the board has adopted rules for setting parole release dates. OAR 255-35-005, *et seq*. Those rules establish matrix ranges of months within which the board has discretion to set an offender's term of imprisonment. *Hamel*, 330 Or at 186. Under the matrix rules, the range of a prison term is a function of the crime's severity rating and the inmate's criminal history/risk assessment score. OAR ch 255, Exhibit C.

ORS 163.105(1)(a) (1993) provides that a person convicted of aggravated murder shall be sentenced to "death, life imprisonment without the possibility of parole or life imprisonment." Under paragraph (1)(c) of that statute, a sentencing court is required to order a person sentenced to life imprisonment to be "confined for a minimum of 30 years without the possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp." Paragraph (1)(c) notwithstanding, ORS 163.105(2) (1993) provides that, after serving 20 years in prison, a prisoner convicted of aggravated murder can petition for a "murder-review" hearing, at which the prisoner bears the burden to show by a preponderance of the evidence that they are "likely to be rehabilitated within a reasonable period of time." If the board finds that the prisoner has met that burden and that the "terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release." ORS 163.105(3) (1993). The board then is required to hold a hearing and set the offender's prison term and initial date of release on parole under the matrix rules. ORS 144.120(1) (1993); ORS 144.780 (1985); *Hamel*, 330 Or at 185-86. In setting the prison term, the board determines the "crime severity rating and subcategory rationale," the "prisoner's history/risk assessment score," the "matrix range," and any

aggravating or mitigating factors that justify a departure from the matrix range. OAR 255-35-013 (May 19, 1988); *see also* OAR ch 255, Exhibit A; Crime Severity Ratings (Oct 9, 1992); OAR ch 255, Exhibit B-1; Criminal History/ Risk Assessment (Oct 9, 1992); *Price v. Board of Parole*, 301 Or 393, 396, 723 P2d 314 (1986) (describing procedures for setting prison terms).

Until 1988, both murder and aggravated murder had a crime severity rating of category 7. *See, e.g.*, OAR ch 255, Exhibit A, Part I (May 19, 1982). The crime of murder, ORS 163.115, had subcategories for different attendant circumstances; however, both subcategories received a severity rating of 7. *See, e.g.*, OAR ch 255, Exhibit A, Part II (May 31, 1985). In 1988, the board adopted subcategories for aggravated murder that mirrored those for murder and increased the maximum severity rating for certain conduct to 8:

"SUBCATEGORY 1 – RATING 8:

"Stranger to stranger; cruelty to victim; prior conviction of murder or manslaughter; evidence of significant planning or preparation.

"SUBCATEGORY 2 – RATING 7:

"All other cases of aggravated murder."

OAR ch 255, Exhibit A, Part II (July 1, 1988).

However, the board subsequently determined that it could not employ a crime severity rating or matrix range for the crime of aggravated murder because it was an "unclassified felony." *Janowski/Fleming v. Board of Parole*, 349 Or 432, 453-54, 245 P3d 1270 (2010). As a consequence, the board concluded that it could not set prison terms for aggravated murder and, in January 1991, the board removed the matrix categories for that offense. OAR ch 255, Exhibit A, Part II (Jan 16, 1991).

In 2010, the Supreme Court held in *Janowski/ Fleming* that, when an offender has been found likely to be rehabilitated under ORS 163.105, the board must set a prison term, regardless of whether aggravated murder was an unclassified felony or whether rules existed for establishing

the prison term. 349 Or at 453-54. The court concluded that the "legislature intended that the board employ the matrix system to set release dates for those prisoners whom it \*\*\* determined are capable of rehabilitation." *Id*. at 446.

> In the decision under review in *Janowski/Fleming*, we had reached a similar conclusion but had remanded the cases to the board to permit the board to determine in the first instance what rules and statutes govern the board's release decisions. *Id*. at 435. On review, the Supreme Court concluded that the legislature intended that the board apply the parole matrix to determine when to release prisoners such as the petitioners. *Id*. at 453. As most pertinent here, the court further concluded that a remand to the board was unnecessary because "the board's rules in effect when [the petitioners] committed their offenses *did* include rules for applying the matrix to persons convicted of aggravated murder, even if there was no specific, separate procedure in place under the board's rules for conducting a hearing to set a release date for them when the terms of their confine-ment were converted to life with the possibility of parole."

349 Or at 455-56 (emphasis in original).

To fill the procedural gap in the board's rules, the court held that the board must "conduct a hearing, using whatever procedures it deems appropriate, to set each pris-oner's release date according to the matrix in effect when he committed his crime." *Id.* at 456; *see also Severy v. Board of Parole*, 274 Or App 330, 340-41, 360 P3d 682 (2015), *rev den*, 359 Or 667 (2016) (noting that the court in *Janowski/Fleming* "did not direct the board \*\*\* to use a particular method to determine petitioner's projected parole release date on remand[,]" and "the court's remand instructions did not purport to limit the authority of the board").

In response to *Janowski/Fleming*, in 2012 the board reinstated the subcategories for aggravated murder that it had removed in 1991. In its Notice of Proposed Rulemaking, the board explained that restoring the subcategories was necessary because it could not otherwise establish a matrix range:

> "In [*Janowski/Fleming*], the Board was directed to apply the 'matrix system' in effect at the time the crimes were committed in order to set a prison term for adults convicted

of aggravated murder who had been found likely to be reha-
bilitated within a reasonable period of time under ORS
163.105. Exhibit A-I is amended to restore crime severity
ratings to aggravated murder. Exhibit A-II is amended to
restore the subcategory rationale for aggravated murder,
including Category 7 and Category 8. Both of these changes
are required in order to allow the Board to establish a
matrix range for persons convicted of aggravated murder.”

51-2 Or Bull 8 (Feb 1, 2012).

When it set petitioner's prison term in June 2015,
the board applied the restored crime severity ratings and
subcategories for aggravated murder. Because those sever-
ity ratings and subcategories were not in effect for aggra-
vated murder when petitioner committed his offense, peti-
tioner asserts that the board erred in doing so. Petitioner
explains:

“The board appears to have used a version of the matrix
rules no longer in effect at the time of petitioner's crime, or
used the rules explicitly delineated for murder under ORS
163.115. Either way, the board erred. Petitioner's crime
severity rating should have been classified as a 7, with
a resulting prison term range of 192-240 months. OAR
ch 255, Exhibit C ([Oct 9,] 1992).”

Petitioner does not cite *Janowski/Fleming* in support of that
argument. However, the holding in that case is our primary
guide in addressing his argument.

As discussed, in *Janowski/Fleming* the Supreme
Court held that the board had authority to override a pris-
oner's 30-year mandatory minimum sentence for aggravated
murder and to release the prisoner after 20 years in prison
based on a finding that the prisoner is capable of rehabil-
itation within a reasonable period. *Janowski/Fleming*, 349
Or at 452-53. The question remained: What rules must the
board use to determine the petitioners' release dates? To
answer that question, the court considered the individual
circumstances of the petitioners.

With respect to Janowski, the court observed:

“[W]hen Janowski committed his crimes, aggravated murder
still was a ‘classified felony,’ and there was an assigned crime
severity rating and matrix range for that crime. *See* OAR

ch 255, Exhibit A, Part I, Offense Severity Under Rule 255-35-010 (1982). Moreover, board rules at that time specifically required it to set a matrix range for aggravated murder.”

349 Or at 454. With respect to Fleming, the court stated:

“In May 1985, after Janowski committed his crimes but before Fleming committed his, the board amended its rules to designate aggravated murder as ‘unclassified,’ but it continued to assign a crime severity rating to that crime. OAR ch 255, Exhibit A, Crime Severity Ratings (1985). *** And, in fact, at Fleming’s prison term hearing, the board established a matrix range for him.”

349 Or at 454-55. Because designated matrix rules existed for aggravated murder when both petitioners committed their crimes, the court held that those rules should be used to determine when the petitioners should be released. *Id.* at 456.[3]

Just as it applied in *Janowski/Fleming*, the matrix system applies to the determination of this petitioner’s prison term, even though he committed his offense in 1994, after the Oregon Sentencing Guidelines went into effect.[4] ORS 163.105 (1993); ORS 144.120 (1993);[5] ORS 144.780

---

[3] The court noted that the only question remaining was what the board should do with respect to those prisoners whose terms of confinement were converted to life imprisonment with the possibility of parole and, specifically, what it should do with respect to prisoners, such as the petitioners, whose matrix ranges already had expired. *Id*. That question is not at issue in this case.

[4] Unlike petitioner here, the prisoners in *Janowski/Fleming* were sentenced before the Oregon Sentencing Guidelines went into effect on November 1, 1989. However, the legislature has provided an exception to the general rule that the board has no authority to parole offenders whose offenses were committed after the Sentencing Guidelines went into effect. Oregon Laws 1989, chapter 790, section 28, provides that the statutes governing the parole of inmates “apply only to offenders convicted of a crime committed prior to November 1, 1989, and to offenders convicted of aggravated murder regardless of the date of the crime.” *See State v. Davilla*, 157 Or App 639, 647, 972 P2d 902 (1998), *rev den*, 334 Or 76 (2002) (holding that “[s]entencing for aggravated murder is provided for solely by ORS 163.105 and is not covered under the guidelines); OAR 213-004-0003 (the offense of aggravated murders “set by statute” and is not ranked on the crime seriousness scale of the sentencing guidelines). Thus, the board retains authority to parole aggravated murderers.

[5] In *State ex rel Engweiler v. Felton*, 350 Or 592, 625, 260 P3d 448 (2011), the Supreme Court held that “the exception in [ORS 144.120(1)(a) (1991)] for those convicted of aggravated murder applies only to the timing of the parole hearing; in the case of aggravated murderers, it need not be conducted within one year of the prisoner’s admission to prison. The exception does not mean that aggravated murderers are not entitled to a parole hearing at all.”

(1985). However, unlike petitioner here, Janowski and Fleming committed their offenses before 1991, while a designated matrix scheme for aggravated murder was in effect. Thus, it was logical for the court in *Janowski/Fleming* to conclude that those rules should apply in determining the post-murder review prison terms for the petitioners there. In contrast, petitioner here committed his offense during the period when no matrix rules that expressly applied to aggravated murder were in effect. To fulfill its statutory responsibilities as clarified by *Janowski/Fleming*, the board nevertheless was required to have in place a substantive and procedural mechanism for determining prison terms for persons convicted of aggravated murder who showed that they were likely to be rehabilitated within a reasonable period of time. The parties seem to agree on that much, but from that point of departure their positions diverge.

To set a prison term in his case, petitioner asserts that the board was required to use a crime severity rating of 7 under OAR ch 255, Exhibit C (1992), a matrix rule that the board adopted in 1992.[6] However, petitioner offers no persuasive analysis in support of that argument. The fact that matrix rules expressly applied to setting prison terms for aggravated murder when the petitioners in *Janowski/Fleming* committed their offenses in 1984 and 1986, respectively, was central to the court's disposition of that case. That is not the circumstance here. The 1992 rule on which petitioner relies included no crime severity ratings or subcategories that were designated for setting prison terms for aggravated murder. Rather, that rule governed setting prison terms for other felonies after a history/risk assessment score and severity rating for those felonies had been

---

[6] On administrative review, petitioner made a different argument about how his prison term should be determined:

"The Board utilized the pre-1989 Matrix System grid to establish petitioner's prison term instead of the Sentencing Guidelines Grid in place when his offense occurred in 1994. In 1994, there were no laws in place that indicated the Matrix System grid would be used to establish petitioner's prison term. The Board should have used the Guidelines grid to establish petitioner's release date, which would have placed his range at 225 to 269 instead of 288 to Life. The use of the Matrix system grid has harmed petitioner by increasing his ranges."

Petitioner does not repeat that argument on judicial review.

determined. What is more, petitioner overlooks the fact that the 1992 rule included a crime severity "Category 8" that ranged from 288 months to life imprisonment for an offender such as himself with a "poor" risk assessment. In short, even if that rule had governed setting his prison term, petitioner offers no explanation why the board was required to rate the severity of his crime in category 7.

Petitioner's argument ultimately hinges on the premise that he was entitled to have his prison term set under matrix rules in effect when he committed his offense, regardless of whether they were designated for his offense. Notably, petitioner does not argue that the board's use of the restored subcategories for aggravated murder was inconsistent with its obligations under ORS 163.305 (1993), ORS 144.120 (1993), and ORS 144.780 (1985) to establish ranges of duration of imprisonment to be served by offenders such as petitioner whom it has found likely to be rehabilitated within a reasonable period of time, but for whom no designated matrix rules were in effect at the time of their offenses. Under the circumstances, we conclude that the board did not err by doing so.

In his second argument under his first assignment of error, petitioner asserts that substantial evidence did not support the board's use of the "cruelty to victim" subcategory in setting his prison term. As discussed, the board used that subcategory to rate the severity of petitioner's crime in category 8, and it set his prison term accordingly. When petitioner challenged that finding in his administrative review request, the board responded in a further order that its finding was "amply supported by the evidence that the victim was stabbed 26 times." Subject to the predicate legal issue discussed below, we review that determination for substantial evidence and substantial reason. *Jenkins*, 356 Or at 195.

In a nutshell, petitioner argues:

"The board's reasoning is capable of two interpretations: either that the 26 wounds meant that the victim suffered, or that the number of times petitioner stabbed the victim evidences his cruelty toward the victim. Either interpretation yields the same result: the board erred. The board has misinterpreted the rule if it believed that mere suffering by

> the victim were sufficient to trigger the subcategory. And the mere fact that petitioner stabbed the victim 26 times, given the circumstances of the case, is insufficient to establish his cruelty toward the victim."

According to petitioner, "the circumstances surrounding the crime and the location of the victim's stab wounds show that petitioner stabbed the victim 26 times not to inflict suffering upon the victim, but because petitioner had to fight off the victim and the victim's family members in order to accomplish his objective of killing the victim." As petitioner sees it, those facts are elements of the crime of aggravated murder, and they do not provide substantial reasoning to apply the "cruelty to victim" subcategory.

Initially, we note that petitioner's argument implicitly hinges on a question of law, namely, what mental state inheres in the term "cruelty" in the board's matrix rule? Petitioner argued before the board that *deliberate* cruelty is required and that such conduct is akin to torture, in that it involves as an objective the intentional infliction of pain or suffering apart from the death of the victim. *See State v. Langley*, 314 Or 247, 268, 839 P2d 692 (1992) (addressing "torture" element of aggravated murder as described in ORS 163.095). Without elaboration, petitioner has shifted his position on judicial review, now arguing that cruelty requires a *knowing* mental state.

The board's rule does not specify a mental state that inheres in the word "cruelty," leaving us to discern its intended meaning "by examining its text and context, including other provisions of the same rule, other rules *in pari materia* with the rule in question, the statute authorizing the rule, and any other related statute." *1000 Friends of Oregon v. Jackson County*, 292 Or App 173, 183, 423 P3d 793, *rev allowed*, 363 Or 727 (2018), *rev dismissed*, 365 Or 657 (2019).[7] Using a dictionary definition, petitioner correctly observes that "cruelty" has a commonly understood meaning: "1 : the quality or state of being cruel

---

[7] We also may consider "any relevant statement of agency intent in the rule adoption process or in the application of the rule by the authoring agency in other proceedings." *Id.* In this case, we have found nothing informative in that regard.

: disposition to inflict pain or suffering or to enjoy its being inflicted : INHUMANITY." *Webster's Third New Int'l Dictionary* 546 (unabridged ed 1993). "Cruel," in turn, is defined as "1 a : disposed to inflict pain esp. in a wanton, insensate, or vindictive manner : pleased by hurting others : SADISTIC : devoid of kindness." *Id*.

We agree with petitioner that "cruelty" is a term of common usage and that—in the absence of a pertinent definition in statute or rule—its dictionary definition, along with the meaning of its root word "cruel," are informative. To be sure, as commonly understood, cruelty includes the deliberate infliction of pain and suffering on another person. However, the board's rule neither employs the word "torture," nor does it require "deliberate cruelty," a term that the board knows how to employ when it means to do so. *Cf.* OAR 213-008-0002(1)(b)(A) (requiring "deliberate cruelty to victim"). Perhaps that is why petitioner has shifted his position, now arguing that cruelty requires a "knowing" mental state.

In the related context of criminal culpability, "'[k]nowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). Applying such a standard here, the evidence would need to permit an inference that, in repeatedly stabbing the victim as he did under the circumstances shown, petitioner acted with an awareness that his conduct would inflict pain and suffering on the victim before killing him. That standard is broadly consonant with a second ordinary meaning of cruelty, which includes acts that, by their very nature, demonstrate such a willful and wanton disregard for another person's welfare as to permit an inference that the actor was willing to inflict pain and suffering on the other person. *Cf. Schmidt v. Mt. Angel Abbey*, 347 Or 389, 399, 223 P3d 399 (2009) (explaining that, for purposes of ORS 12.117 (2)(a)(B), phrase "cruelty to [a] child" "most reasonably is interpreted to include (1) acts that are performed with the specific intent of injuring or harming the child and that are capable of producing those results and (2) *acts that, by their*

*very nature, demonstrate a willful and wanton disregard for the child's welfare, such that one can infer a willingness to have the child injured"* (emphasis added)).

It is open to question whether the "knowing" standard for which petitioner advocates is equivalent to the standard for "cruelty to a child" that the court applied in *Schmidt* or, if not, which standard applies to the board's rule here. *See State v. Harrison*, 365 Or 584, 590, 450 P3d 499 (2019) (stating that, "in ordinary usage, the term 'concealed' can connote an element of willfulness and design; on the other hand, the references to 'knowingly' imply a lesser mental state"). Because the parties' discussion of the issue is scant, and the evidence in the record here satisfies either standard, we need not dwell on that possible distinction in this case.

The evidence showed that petitioner confronted the victim in his home and attacked him "without any provocation." The victim was unarmed and had to fight back with his bare hands while petitioner repeatedly attacked him with a knife. The locations of the victim's stab wounds were not limited to areas that likely would result in immediate death, such as the heart or throat. Rather, the victim's injuries included thirteen stab wounds to the "upper extremities" and three stab wounds to the "lower extremities."

Petitioner offered his own explanation for the scope and intensity of his vicious knife attack on the victim, namely, that it was necessary to overcome the victim's self-defense. However, the board was not required to accept that explanation. The totality of petitioner's conduct, including the breadth and location of the wounds that he inflicted on the victim's body, would permit a reasonable person to find that petitioner knowingly inflicted as much pain and suffering as possible before killing the victim and that his acts, by their very nature, demonstrated a willful and wanton disregard for the victim's pain and suffering, such that petitioner was willing to inflict as much pain and suffering as possible before killing the victim. Although not elaborate, the board's finding in its administrative review order adequately addressed petitioner's challenge. We therefore conclude that substantial evidence and substantial reason

supported the board's use of subcategory 1 in setting petitioner's crime severity rating at 8.[8]

We turn to petitioner's second assignment of error, in which he asserts that the board erroneously excluded evidence of his rehabilitative efforts in setting his prison term. The board rejected that evidence on the ground that it was required to set petitioner's prison term based on evidence existing when he committed his crime. On judicial review, petitioner argues that the board erroneously rejected his proffered evidence under this court's holding in *Cunio v. Board of Parole*, 288 Or App 459, 407 P3d 839 (2017), *rev den*, 362 Or 860 (2018). As noted, the board concedes error, and we accept that concession.

In *Cunio*, among other crimes the petitioner was convicted as a juvenile of two counts of aggravated murder. 288 Or App at 460. In 2012, the board held a prison term hearing to determine his projected parole release date on the aggravated murder sentences. At the hearing, the petitioner sought to introduce a written report from a clinical psychologist, a parole-release plan, and a letter that described his activities in prison and advocated for his release. *Id*. at 464. The board rejected that evidence on the ground that, under applicable rules, it could only consider evidence relevant to the petitioner's circumstances at the time he committed his crimes. The board also disregarded evidence of the petitioner's assault conviction while he was imprisoned. *Id*. at 465. On judicial review, this court concluded that— consistent with *Calderon-Pacheco v. Board of Parole*, 309 Or 454, 458-59, 788 P2d 1001 (1990), and under OAR chapter 255, division 35, specifically Exhibits E-1 and E-2—the board was required to consider post-incarceration evidence. *Cunio*, 288 Or App at 467-70.

In this case, for similar reasons as in *Cunio*, the board rejected petitioner's proffered evidence of his

_____

[8] Implicating a second legal issue, petitioner appears to suggest that the evidence on which the board relied to find "cruelty to victim" proved one or more elements of the offense of aggravated murder but was not sufficient to satisfy subcategory 1. However, petitioner does not refer to the theory of aggravated murder on which he was convicted, let alone explain how that theory might preclude the board from using the "cruelty to victim" subcategory in setting his prison term. In the absence of a developed argument in that regard, we do not consider it further.

post-incarceration participation in programs and jobs at the prison-term hearing, as well as other information relating to his performance in prison. Accordingly, *Cunio* applies here, and remand is appropriate for the board to consider post-incarceration evidence.[9]

Vacated and remanded for consideration of post-incarceration evidence.

---

[9] Although the issue is not before us, we note that, in *Cunio* the court also observed that Exhibit E-1, which lists aggravating factors, is not temporally or otherwise limited to the circumstances surrounding the crime. *Cunio*, 288 Or App at 468. *See also Calderon-Pacheco*, 309 Or at 457 ("Board rules call for consideration of items in aggravation and in mitigation when the Board establishes a release date."); OAR 255-035-016(1) (Jan 13, 1992) ("The board may depart from the appropriate parole matrix range only upon making a specific finding that there is aggravation or mitigation which justifies departure from the range pursuant to Exhibit E-1 and E-2.").