Submitted August 5, OAR 255-040-0005(5) held invalid  November 23, 2022

JACOB BARRETT,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A177845

522 P3d 544

Petitioner challenges the validity of OAR 255-040-0005(5), a rule excluding inmates convicted of aggravated murder from personal review eligibility. Specifically, petitioner argues that once an inmate convicted of aggravated murder and sentenced to life imprisonment has had their sentence converted to life with the possibility of parole and the Board of Parole and Post-Prison Supervision has set an initial parole release date, the prisoner is entitled, under ORS 144.122, to apply for a personal review, and the Board of Parole and Post-Prison Supervision lacks the statutory authority to exclude such a prisoner from applying. *Held*: Based on the text and context of ORS 144.122, OAR 255-040-0005(5) exceeds the rulemaking authority granted in ORS 144.122.

OAR 255-040-0005(5) held invalid.

Jacob Barrett filed the briefs *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JAMES, P. J.

OAR 255-040-0005(5) held invalid.

**JAMES, P. J.**

In this rule challenge brought under ORS 183.400, petitioner challenges the validity of OAR 255-040-0005(5). According to petitioner, the Board of Parole and Post-Prison Supervision (the board) exceeded its statutory authority when it adopted OAR 255-040-0005(5) because, contrary to ORS 144.122, the rule specifically excludes inmates convicted of aggravated murder, including those for whom an initial parole release date has been set under ORS 144.120, from personal review eligibility. We conclude that the rule is invalid.

Under ORS 183.400, "any person may petition this court to determine the validity of a rule." *Assn. of Acupuncture v. Bd. of Chiropractic Examiners*, 260 Or App 676, 678, 320 P3d 575 (2014) (internal quotation marks omitted). "In reviewing a rule challenge under [ORS 183.400], we may declare the rule invalid only if we conclude that it violates constitutional provisions, exceeds the statutory authority of the agency that adopted the rule, or was adopted without complying with rulemaking procedures." *Id.* (quoting ORS 183.400(4)). In well-written *pro se* briefing, petitioner contends that OAR 255-040-0005(5) directly conflicts with the provisions of ORS 144.122—the statute giving the board authority to create the rule.

It is necessary to establish some background on aggravated murder sentencing before we address petitioner's arguments. For a defendant convicted of aggravated murder under ORS 163.095, ORS 163.105(1)(a) provides three sentencing options: (1) life imprisonment; (2) life imprisonment without the possibility of release or parole; or (3) death. The jury determines whether there are "sufficient mitigating circumstances" for a life imprisonment sentence rather than life imprisonment without possibility of parole. ORS 163.150(3)(b).

If the defendant is sentenced to life imprisonment, then the court will order the defendant to be "confined for a minimum of 30 years without possibility of parole or release to post-prison supervision except as provided in ORS 144.397, and without the possibility of release on

work release or any form of temporary leave or employment at a forest or work camp." ORS 163.105(1)(c). "At any time after completion of a minimum period of confinement pursuant to subsection (1)(c)," the defendant may petition the board to hold a "murder-review" hearing to determine if the defendant "is likely to be rehabilitated within a reasonable period of time," which the defendant has the burden of proving by a preponderance of the evidence. ORS 163.105(2), (2)(a); *State v. Link*, 367 Or 625, 629, 482 P3d 28 (2021) (referring to the hearing where the board makes a prisoner's rehabilitation determination as a "murder-review hearing").

If after the murder-review hearing the board determines that the defendant is likely to be rehabilitated within a reasonable period of time, then the board enters an order converting the sentence to "life imprisonment with the possibility of parole, release to post-prison supervision or work release." ORS 163.105(3). The board may also set a release date. ORS 163.105(3). However, ORS 163.105 is silent regarding how the board is supposed to determine the duration of confinement between the sentence conversion and the set release date.[1] *State ex rel Engweiler v. Felton*, 350 Or 592, 625-26, 260 P3d 448 (2011) ("ORS 163.105 [(1989)] does not authorize the board to take any action relating to a parole release date; the board's sole directive in that statute is to 'convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release.' ORS 163.105(3)."); *see also Janowski/Fleming v. Board of Parole*, 349 Or 432, 446, 245 P3d 1270 (2010) (observing that ORS 163.105 (1985) did not address how the board should determine the prisoner's length of confinement between sentence conversion and initial parole release date).[2]

―――――――――

[1] If the board does not find the prisoner is capable of rehabilitation, the board will determine the date of a later murder-review hearing and the prisoner, in accordance with ORS 144.285, may petition for an interim hearing. ORS 163.105(4).

[2] In *Engweiler* and *Janowski/Fleming*, the court interpreted the 1989 and 1985 versions of ORS 163.105, respectively. *Engweiler*, 350 Or at 603 n 9; *Janowski/Fleming*, 349 Or at 437. The legislature has amended ORS 163.105 many times since then; however, the provisions of the statute that are relevant to this particular issue remain the same. Accordingly, we cite the current version of the statute throughout our discussion of this issue.

In *Janowski/Fleming*, the Supreme Court concluded that the "legislature intended that the board employ the matrix system to set release dates for those prisoners whom it \*\*\* determined are capable of rehabilitation." *Forbus v. Board of Parole and Post-Prison Supervision*, 309 Or App 296, 303, 482 P3d 95 (2021) (citing *Janowski/Fleming*, 349 Or at 446).[3] Petitioner, and the board, proceed from a position that changes in the statute did not displace that holding. Without argument from the parties to the contrary, we accept that premise. *See Link*, 367 Or at 632 (accepting, for purposes of the opinion, the state's understanding that, "at [sentence conversion] or 'shortly thereafter,' the board will establish defendant's sentence term pursuant to the matrix system and set defendant's release date").

Under the parole matrix system, the board applies appropriate matrix ranges pursuant to ORS 144.780 to set the defendant's initial parole release date. ORS 144.120(2); *Engweiler*, 350 Or at 625-26 (noting that, due to the lack of other statutory authority "for the board to set an initial release date for aggravated murderers entitled to parole consideration under ORS 163.105," ORS 144.120 provides the statutory authority for setting an initial parole release date for those convicted of aggravated murder entitled to parole consideration instead). Once the initial parole release date is set, the defendant is entitled to release on that date unless prior to that release date the board finds that one of the proscribed reasons to postpone the prisoner's release date exists. ORS 144.125(2) - (4); ORS 144.245(1).[4]

---

[3] Until the Supreme Court decided *Janowski/Fleming*, the relationship between ORS 163.105 and the provisions of ORS chapter 144 was not entirely clear. The beginning of ORS 163.105 states, "[n]otwithstanding the provisions of ORS chapter 144" and ORS 144.110(b)(A) states, "[t]he board shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder under the provisions of ORS 163.095, except as provided in ORS 163.105." In *Janowski/Fleming*, the Supreme Court clarified *when* ORS 163.105 controls, interpreting ORS 144.110(b)(A) (1985) and ORS 163.105 (1985) together to only prevent the board from setting an aggravated murder prisoner's parole release date under ORS 144.120 (1985) until after the board has both determined that the prisoner is capable of rehabilitation and converted the sentence under ORS 163.105 (1985). 349 Or at 447, 449-50.

[4] There are three reasons why the board may postpone a defendant's statutory release: (1) if the defendant "has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community"; (2) if the board finds the defendant's parole plan inadequate; or (3) if the board finds the prisoner "engaged in serious misconduct during confinement." ORS 144.125(2) - (4).

With that background in mind, we turn to the question before us, which presents an issue of statutory interpretation. Our goal in construing a statute is to discern the intention of the legislature. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); ORS 174.020(1)(a). ORS 144.122 allows the board to grant requests that the defendant's initial release date be reset to an earlier date and allows the board to adopt rules pertaining to that process. ORS 144.122 provides as follows:

"(1)   After the initial parole release date has been set under ORS 144.120 and after a minimum period of time established by the State Board of Parole and Post-Prison Supervision under subsection (2)(a) of this section, the prisoner may request that the parole release date be reset to an earlier date. The board may grant the request upon a determination by the board that continued incarceration is cruel and inhumane and that resetting the release date to an earlier date is not incompatible with the best interests of the prisoner and society and that the prisoner:

"(a)   Has demonstrated an extended course of conduct indicating outstanding reformation;

"(b)   Suffers from a severe medical condition including terminal illness; or

"(c)   Is elderly and is permanently incapacitated in such a manner that the prisoner is unable to move from place to place without the assistance of another person.

"(2)   The Advisory Commission on Prison Terms and Parole Standards may propose to the board and the board shall adopt rules:

"(a)   Establishing minimum periods of time to be served by prisoners before application may be made for a reset of release date under subsection (1) of this section;

"(b)   Detailing the criteria set forth under subsection (1) of this section for the resetting of a parole release date; and

"(c)   Establishing criteria for parole release plans for prisoners released under this section that, at a minimum, must ensure appropriate supervision and services for the person released."

The rules designate the process described in ORS 144.122 as a "personal review." OAR 255-040-0005(1). Under ORS 144.122(2), the board is authorized to adopt rules relative to adjusting the initial release date; hence, the board's authority to adopt OAR 255-040-0005 stems from subsection (2). OAR 255-040-0005 governs the scheduling of personal reviews to reduce established prison terms for inmates. Subsection (5) of the rule provides, in relevant part, "inmates sentenced for aggravated murder *** are not subject to personal reviews." OAR 255-040-0005(5).

Petitioner argues that subsection (5) is in direct conflict with ORS 144.122, specifically, that excluding inmates sentenced for aggravated murder from personal review eligibility under subsection (5) exceeds the board's statutory authority. In petitioner's view, once a prisoner convicted of aggravated murder and sentenced to life imprisonment has had their sentence converted to life with the possibility of parole and the board has set a release date, the prisoner is entitled, under ORS 144.122, to apply for a personal review, and the board lacks the statutory authority to exclude such a prisoner from applying. In response, the board argues that the text of ORS 144.122 gives the board broad discretion under which it can exclude categories of prisoners, including aggravated murderers, from the personal review process. We begin by considering the text of ORS 144.122.

As set out above, ORS 144.122(1) states that, after two conditions are met, a "prisoner may request that the parole release date be reset to an earlier date." The conditions are that (1) "the initial parole release date has been set under ORS 144.120" and (2) "a minimum period of time established by the [board] under subsection (2)(a) of this section" has passed. ORS 144.122(1). In *Engweiler*, the court explained that, after converting a life sentence imposed for aggravated murder under ORS 163.105, ORS 144.120 is the sole statutory authority applicable to that class of prisoners and it directs the board to set an initial release date at that time. 350 Or at 625-26. Given that understanding, the board has not identified, nor do we perceive, any textual reason to think that the legislature intended to exclude prisoners sentenced for aggravated murder prisoners whose sentences have been converted and whose initial parole release dates

have been set under ORS 144.120 from "request[ing] that the initial parole release date be reset to an earlier date" under ORS 144.122(1). Assuredly, the board is free to provide by rule for "a minimum period of time" that must elapse before a prisoner may apply, ORS 144.122(1); however, the board cannot simply prohibit a qualifying prisoner from applying at all.

ORS 144.122(4) buttresses that conclusion because it specifically excludes prisoners sentenced to life imprisonment without the possibility of release or parole under ORS 163.150. ORS 144.122(4) states, "The provisions of this section do not apply to prisoners sentenced to life imprisonment without the possibility of release or parole under ORS 138.052 or 163.150." As explained above, that sentence is different from a life imprisonment sentence, which entitles a prisoner to murder-review hearings and, consequently, can be converted to a sentence of life imprisonment *with* the possibility of parole. *See* ORS 163.105(1)(c) (addressing those sentenced to life imprisonment, not life imprisonment without possibility of parole or release); ORS 163.105(2) ("At any time after completion of a minimum period of confinement pursuant to subsection (1)(c) of this section," the board shall hold a murder-review hearing.). That reference to a different sentence strengthens our conclusion that the legislature did not intend for the board to have the authority to exclude those whose life sentences have been converted after a murder-review hearing from the provisions of ORS 144.122. *See Janowski/Fleming*, 349 Or at 447 (explaining that, together, ORS 144.110(2)(b)(A) and ORS 163.105 "preclude the board from setting a parole release date for a prisoner who had been convicted of aggravated murder [and sentenced to life imprisonment] *until* the board has found the prisoner to be capable of rehabilitation and has converted the terms of his confinement [from life in prison to life in prison with the possibility of parole]" (emphasis added)).

The board argues that both the inclusion of the clause "the board may grant the request" in subsection (1) of ORS 144.122 and the absence of affirmative statements dictating that specific classes of prisoners under specific circumstances may request personal reviews demonstrates that the legislature intended to give the board discretion

to determine whether to advance a prisoner's initial parole release date. In support, the state cites *Scott v. Dept. of Rev.*, 358 Or 795, 801, 370 P3d 844 (2016), where the court observed that, "[o]rdinarily, the use of the word 'may' in a statute is permissive; it denotes permission, authority, or liberty to do something." We do not disagree that, here, "may" is permissive. The statute grants the board discretionary power to grant or deny personal review requests, within the bounds the legislature has set; however, in light of the fact that the statute expressly *includes* prisoners whose sentences have been converted and initial release dates set, the word "may," in context, does not give the board the authority to bar requests from any group of prisoners to which the statute otherwise applies.

To the extent that any ambiguity exists in the text itself, the context of ORS 144.122 also supports our interpretation of ORS 144.122. Oregon Laws 1989, chapter 790, section 28, *compiled as a note after* ORS 144.110 (1989), provides:

> "Sec. 28. The provisions of ORS 144.110, 144.120, 144.122, 144.125, 144.130, 144.135, 144.185, 144.223, 144.245, 144.270 and 144.305 apply only to offenders convicted of a crime committed prior to November 1, 1989, and to offenders convicted of aggravated murder or murder regardless of the date of the crime."

The Supreme Court analyzed that legislative note and its effect on ORS 144.120 (1991), in *Engweiler*, 350 Or at 623-26. ORS 144.120 sets timelines for initial parole hearings and initial release determinations. In 1991, the legislature added to ORS 144.120(1)(a) the phrase "with the exception of those sentenced for aggravated murder":

> "For those prisoners sentenced to a term of imprisonment for life or for 15 years or more, *with the exception of those sentenced for aggravated murder* or murder, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the institution."

ORS 144.120(1)(a) (emphasis added); *Engweiler*, 350 Or at 622 (discussing legislative change).

In *Engweiler*, the relators argued that they were entitled to initial parole hearings and release determinations, and the board responded that the legislature's insertion of "with the exception of those sentenced to aggravated murder" indicated an intention to exclude those sentenced for aggravated murder from the provisions of ORS 144.120. 350 Or at 595, 602, 622. The Supreme Court determined that reading the legislative note and the exception under ORS 144.120(1)(a) (1991) together, the exception "applies only to the timing of the parole hearing; in the case of aggravated murderers, it need not be conducted within one year of the prisoner's admission to prison. The exception does not mean that aggravated murder prisoners are not entitled to a parole hearing at all." *Id.* at 625.

In reaching that conclusion, the court gave the legislative note significant weight, stating, "[a]n interpretation of ORS 144.120(1)(a) (1991) that entirely exempts aggravated murderers from the hearing requirement would directly conflict with the legislative note." *Id.* The court's interpretation of the legislative note is consistent with our understanding, based on the text of ORS 144.122 itself, that ORS 144.122 does not exclude prisoners sentenced to life imprisonment whose sentences have been converted to life imprisonment with the possibility of release and a release date set.

Reading the text of ORS 144.122 in context, we conclude that aggravated murder prisoners whose sentence has been converted to life imprisonment with possibility of parole or release following a successful murder-review hearing and whose initial parole release dates have been set under ORS 144.120 are entitled to personal reviews. Hence, OAR 255-040-0005(5) exceeds the rulemaking authority granted in ORS 144.122 and the rule is invalid.

OAR 255-040-0005(5) held invalid.